Equity. — The plaintiff purchased a tract of land of the defendant on the north side of the river Holston, including a bend called the steep rock, at four dollars an acre, estimating the tract at a thousand acres; bonds were exchanged on the ninth of May, 1798.
The plaintiff gave his bond, payable in two instalments, 15th March, 1799, and first of April, 1800.
The defendant executed his bond to the plaintiff for a title to the tract of land on which he then lived, containing 1000 acres lying in one body on the north side of Holston River, as described in the patent for that quantity. Possession to be given at the time of the first payment, and the deed to be made on the day of the second payment. *Page 67 
This bond binds the defendant to warrant a thousand acres in the tract, but if there should not be that quantity, a deduction to be made in proportion to the purchase-money which is four thousand dollars.
The bill was filed in June, 1800.
The plaintiff states that, previous to his purchase, the defendant showed him the land lying in the bend.
They went to a sugar-tree corner marked C, at the lower part of the land. thence up the meanders of the river, around the bend, until they came

to a poplar, gum, and hickory, marked A, from which the *Page 68 
defendant told the plaintiff that the tract ran north 140 poles, and from thence to the beginning.
That he saw the grant under which the defendant claimed, which seemed to accord with the description.
The grant, which was offered in the course of the hearing, appeared to have been altered by the secretary of North Carolina on the 10th of February, 1801, agreeably to an order of the County Court.
The land included in the grant, as appeared from the plat of the first survey, took in the bend of the river, and accorded with the land shown to the plaintiff. But the courses called for in the surveyor's certificate did not; nor did such certificate, or the original grant, call for the meanders of the river at all, which the surveyor intended from his plat.
Upon trying these courses, it appeared they did not include the land as described in the plat, but that contained within the lines marked 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13. The quantity of land contained in the figure C, A, B, by survey in this cause, is 763 acres, 1 quarter, and 30 poles, on the north side of the bend; between the river and the courses of the grant, 101 acres.
The figure C, A, D, E, F, G represents the courses of the grant as it stands altered, and contains 1000 acres. The bill states that the land shown was what the plaintiff expected to purchase, and was the inducement to the contract.
It also charged that the plaintiff having ascertained that there was a deficiency of 236 acres, two quarters, and two poles; and, having paid the first instalment, when the second became due demanded of the defendant a deed for the quantity, as ascertained to be in the tract; to deduct for the deficiency, and he would pay the balance agreeably to the bond.
This the defendant refused, alleging that he would get land of Gilbreath adjoining, and would make up *Page 69 
the thousand acres, that if the plaintiff did not choose to take it so he would not convey 101 acres which lay in the bend, and was not within the courses of the grant.
The defendant filed his answer on the 30th of March, 1801. He admits that he showed the land to the plaintiff, but says that he was then mistaken with respect to the land included in the grant as appeared afterwards, when the courses were tried. The original grant was dated the 15th of December, 1791, No. 131.
He states that it was his understanding of the contract that he should deduct, not at the rate of four dollars an acre for the deficiency, but in proportion to the value of what should be deficient, and concludes with an averment that he has been ready to convey since the alteration of the grant, winch rectified the mistake of the surveyor, and now includes the land shown upon the sale and called for by the bond.
There was evidence on both sides, but the plaintiff's bill appeared to be, in every material point, supported by proof.
The defendant proved that he had offered the plaintiff a deed for the land contained in the grant as rectified, containing 1000 acres.
The principal point for the consideration of the Court was, whether the plaintiff could be compelled to receive a deed for the whole land contained in the grant as altered, or for only 763 acres, 1 quarter, and 30 poles.
The assent of parties to a contract is essentially necessary to its obligatory force. The minds of parties having an equal view of the subject-matter should concur; where this concurrence is complete in all material points, the contract should be inviolable. To discover this concurrence, respecting the subject of the contract under consideration, is the first object of the Court.
The statement made by the plaintiff, in his bill, seems to us to be materially correct.
The plat annexed to the grant which the defendant held at the time of the purchase, and which was then in his possession, exhibits a view of the land as being entirely on the north side of the river, and nearly as represented to the plaintiff when shown to him, as proved by several witnesses.
The defendant states, in his answer, that at the time of the contract he did not know of the mistake in his grant. The grant, as it originally stood, calls to run certain courses up the river, which the plat showed was to a poplar, gum, and hickory; then north 140 poles, and from thence to the beginning. It is manifest that the defendant considered these as the bounds of the land at the time he made the contract; and it is proved to the satisfaction of the Court that he showed them as such. *Page 72 
Under these circumstances the bond for a title was given for land on the north side of the river, agreeably to the patent. What patent? It is answered, the grant as it then stood in the understanding of both parties, and as it was shown. This was beginning at the sugar-tree running up the river, with its meanders to the poplar, gum, and hickory, north 140 poles, and thence to the beginning.
Within these bounds it was the intention of the defendant to sell, and of the plaintiff to purchase; and what proves it more decisively, if possible, is that the defendant carefully provided in his contract, that, if there should not be 1000 acres, there should be a proportionate deduction in the price or purchase-money.
Attempts have been made to show that the plaintiff designed to purchase the land where the cabin is situated above, near the river, and without these lines; but no effort to prove that he ever agreed to take or consider the land on the north boundary as part of this contract.
It is on this boundary the greater part of the deficiency lies, which the defendant now insists the plaintiff shall take. It is clear that none of the land without the limits, as described by the plats of the original grant, was within the contemplation of the parties.
The intention of the parties must be carried into effect; but, in doing this, it is objected that we shall contravene principles of practice. That by decreeing to the plaintiff 101 acres, without the course of the defendant's original grant, we admit the correction of the grant as to that, and consequently ought as to all, or be inconsistent.
This argument may seem plausible, but is not sound; for it is admitted by the defendant's counsel, which we think correct, that it is not material whether a party to a contract is able to comply with it at the time of its formation, or not, provided he is afterwards in a capacity to do it.[1] *Page 73 
Now it is of no consequence with this court whether the defendant's grant was altered or not, nor whether it were properly altered. The plaintiff has proved his contract, and we will specifically give him the benefit of it, as far as the defendant is able; but we cannot say that the plaintiff shall recover lands which neither he nor the defendant had any idea of at the time of making the contract.
The rectification of the defendant's grant could not enlarge or alter the contract made with the plaintiff. It was a particular piece of land, then in the view of the parties, which was the subject of the contract, and not the land which would be included in a grant thereafter to be rectified.
The alteration of a grant cannot possibly be conclusive upon any person, except an individual with whose land it may interfere, after having notice agreeably to the Act of Assembly; and on the State making the alteration where the land was vacant.[2]
Viewing the contract as stated, let it be decreed that the plaintiff pay the defendant the balance of the price of the 763 acres, 1 quarter, and 30 poles at four dollars an acre, and no more; and, upon his so doing, that the defendant convey to the plaintiff in fee-simple, with general warranty, all the land in the bend of the river, beginning at the sugar-tree, running up with its meanders to the gum, hickory, and poplar, north 140 poles, and from thence to the beginning, containing 763 acres, 1 quarter, and 30 poles.
The defendant to pay all costs.
NOTE. — A question was made whether the attendance of witnesses could be taxed before the cause was set for hearing.
[1] See 1 Johns. 595; Pows. Cont. 266; 7 Bro. C. C. 332; 2 P. W. 629; 10 Ves. Jr. 315.
[2] See Acts Mar. 1796, c. 20; 1801, c, 14.