E. W. EVINS, et al., Complainants-Appellants,
v. CORLEY PRICE et al., Defendants-Appellees.
—477 S.W.2d 204.

Middle Section. July 30, 1971.

Certiorari Denied by Supreme Court February 22, 1972.

628

James H. Kinnard, Macfarland, Reed & Kinnard, Lebanon, for complainants-appellants.

McAllen Foutch, Smithville, for defendants-appellees.

TODD, J. The complainants, E. W. Evins and N. B. Merriman, have appealed from a Chancellor's decree dismissing their suit for reformation or rescission of a real estate sale because of an alleged shortage in the number of acres sold.

This controversy arises from the auction sale of a farm located partly on the north side and partly on the south side of New Hope Road. Complainants claim to have purchased the larger portion of the farm on the north side of the road for $20,500.00 under the erroneous impression that same consisted of approximately 100 acres, whereas a survey disclosed that said part of said farm contained only 62.35 acres.

The facts are almost entirely undisputed.

On November 24, 1910, Sam Malone conveyed to Ed Nixon a one-half interest in land in the first civil district of DeKalb County, described as follows:

". . . with the following boundaries:

North by Donnell

East " Granstaff

South " S. Grandstaff

West " Burk & Donnell, *containing 103 A. More or less . . .*"

This record does not contain the deed whereby Ed Nixon acquired the other half interest in the described tract.

On November 13, 1919, J. S. Turner and wife conveyed to Ed Nixon a tract of land in the first civil district of DeKalb County described as follows:

"North by said Ed Nixon. On the South by Harriet Lawrence & Ida Smith on the East by said Ed Nixon on the West by C. P. & R. G. Donnell. The same being the land conveyed to us by Lafayte Burk & wife Harriet Burk dated the 24 day of February 1919. *containing by estimation 27 acres more or less . . .*" (Emphasis supplied)

On January 2, 1957, Ed Nixon and wife conveyed to Hoyt Reynolds and wife a tract in the First Civil District of DeKalb County described as follows:

"Bounded on the North by the lands of James Auburn Grandstaff; bounded on the East by a private road between our lands and the lands of C. M. Grandstaff; bounded on the South by the lands of Martin, the lands of Sandlin, and the lands of Adamson; and bounded on the West by the Adamson road and the lands of Frank Brown, *containing a total of 130 acres* more or less, and being the same lands described in conveyance from I. A. Eaton, et ux. to Ed Nixon and Sam Malone, which deed is of record in Deed Book R-1, page 18 of the Register's Office, DeKalb County, Tennessee, and in conveyance from Sam Malone to Ed Nixon under date of November 24, 1910, which deed is of record in Deed Book *G-3, page 549* of the Register's

Office of DeKalb County, Tennessee, and also the land described in deed from *J. S. Turner,* et ux. to *Ed Nixon* under date of November 13, 1919, which deed is of record in *Deed Book X-1, pages 376-77* of the Register's Office of DeKalb County, Tennessee." (Emphasis supplied)

Upon the death of Hoyt Reynolds, his wife, Ruby Reynolds, became absolute owner of the subject property. Upon her death, her heirs, Corley Price and Linda Gale Hudson, became the owners of the property.

At some time during 1969, Corley Price and Linda Gale Hudson employed M. S. Scott, a licensed real estate broker, to sell the subject property. Advertisements were published in the local newspaper announcing an auction sale of a "130 acre farm". One of said advertisements stated that the farm would be sold in two tracts and as a whole, with final sale in the form producing the largest aggregate sale price.

Tract No. 1 was described in said advertisement as follows:

"Tract #1—Consists of *about 98 acres* and good 7-room frame house and bath, with three rooms upstairs, concrete porch, most all hardwood floors, running water, everlasting well and outbuildings.

70 acres under cultivation, balance in pasture and woods area. Watered by everlasting well and spring.

Located North of New Hope Road with long road frontage." (Emphasis supplied)

On the property was posted a sign which announced:

"130 acre farm to be sold in two tracts, Tract No. 1 98 (100) acres."

The testimony was uncertain as to whether the sign stated 98 or 100 acres in Tract No. 1.

The complainants, E. W. Evins and N. B. Merriman are bankers who frequently buy farm property for investment. They agreed to attempt to buy Tract 1 of the subject property. They were not interested in Tract 2. Both complainants examined Tract 1 "from the road." One of complainants walked over the front part of the farm, but "did not have the ambition" to walk to the rear boundary which was most remote from the road.

On the day of the sale, the auctioneer (Scott) offered Tract 1, stating that it was 98 acres, more or less "be whatever it may, and the fence will be the line." Scott also stated that the former owner, Mr. Nixon, had told him there were 98 acres in Tract 1. Complainant, Merriman, offered the highest bid for Tract 1 at $20,000.00. Another bidder, Jim Sandlin, bid highest on Tract 2 at $15,000.00.

When bidding upon the farm as a whole began, complainant, Merriman left the sale, but told someone (it is not clear who was told) that he (Merriman) would leave a "standing offer" of $20,500.00 for Tract 1. This information ultimately reached Mr. Jennings, the "ground man" for the auctioneer and Charlie B. Martin, a bidder who offered the high bid of $36,800.00 for the entire farm (both Tracts 1 and 2). The auction was concluded with

the announcement that Mr. Martin had bought the entire farm for $36,800.00.

Thereafter, on instructions of Charlie B. Martin, the successful bidder on the entire farm, separate deeds were prepared, one deed to Mr. Martin for the smaller tract for a consideration of $16,300.00 and one deed to complainants Merriman and Evins for the larger tract for a consideration of $20,500.00. Said deeds were duly executed by the sellers and delivered to conveyees upon payment of the stipulated consideration.

The deed to complainants contained the following description:

"Bounded on the North by the property line of Frank Brown, Bounded on the South by New Hope Road, Bounded on the East by the land of Jim Auburn Grandstaff, and Bounded on the West by the property line of Frank Brown, *containing 98 acres more or less,* and being the same lands described in conveyance from Ed Nixon, Et ux. to Hoyt Reynolds, Et ux., which deed is of record in Deed Book G-3 at page 569 of the Register's Office, DeKalb County, Tennessee.

"This also being the same land inherited by us from our Father and Mother Hoyt Reynolds and Ruby Reynolds, who is now deceased, and we being the only lawful heirs of their estate." (Emphasis supplied)

On November 25, 1969, at the request of complainants, Campbell Smoot, Jr., a licensed surveyor, made a survey

from which he determined that Tract 1 contained 61.4819 acres.

A most interesting feature of said survey is the lack of uniformity of depth of the tract, resulting in extreme irregularities in the "back line." Measurements from the road to the "back line" at various points are estimated from the scale drawing to be 60 feet, 400 feet, 1000 feet, 2005 feet and 1150 feet. From this situation, it is readily understandable that no accurate idea of the acreage could be derived without a knowledge of the meanderings of the rear line of the property with the consequent variations in depth from front to rear.

■ On February 21, 1970, complainants filed this suit against the said sellers, Corley Price and Linda Gale Hudson, Corley Price, administratrix of the estate of Ruby Reynolds, deceased, and M. S. Scott. In their original bill, complainants prayed for a temporary injunction against disposal of the proceeds of said sale, for a reformation of the deed and abatement and partial refund of purchase price, or, in the alternative, for a rescission of the sale and refund of the entire purchase price.

After hearing oral evidence, the Chancellor filed an opinion in which he found the preponderance of the evidence to show that the sale to complainants was in gross and not by the acre, that complainants had opportunity to and did examine the land, that complainants were more interested in the frontage on the public road and were not particularly interested in the rear portion of the tract, and that there was no fraud, and that:

"I consider the facts in this case to be stronger for the defendants than were the facts in Acuff v. Allen cited by both sides."

Accordingly, a decree was entered denying relief and dismissing the bill at the cost of complainants.

The first, second and eighth assignments of error complain generally of the failure of the Chancellor to grant relief because of the amount of deficiency. These assignments will be discussed last.

█ The third assignment complains of the finding of the Chancellor that "The real estate was advertised extensively to be sold in one tract of 32 acres, more or less, and the other tract of 98 acres, more or less . . ." It is insisted that the advertisement of the larger tract in controversy did not read "98 acres, more or less," but "about 98 acres." It is correct that the said finding of the Chancellor does not conform verbatim to the newspaper advertisement heretofore quoted, but said finding does conform to the oral statement of the auctioneer before the sale, quoted supra. Whether the Chancellor considered the word "about" to be equivalent to the words "more or less," or whether the Chancellor based his finding upon said oral statement of the auctioneer (which was, itself, an advertisement), the particular wording of the Chancellor's finding upon a minor evidentiary fact will not form a basis for reversal unless this Court should reverse the conclusions of the Chancellor.

The third assignment of error is respectfully overruled.

■ The fourth assignment of error complains of the weight given to the fact that the sellers were women who were uninformed as to the amount of acreage and who dealt through a licensed professional agent. Complainants correctly state that the sellers were and are bound by the acts and statements of their agent. To this extent, this assignment has substance. Otherwise, the efficacy of the assignment must be considered along with assignments 1 and 2 in respect to the overall merits of the controversy.

■ Assignment of Error No. 5 complains of the consideration given to the prior deeds quoted supra. The statements of said deeds were relevent and material upon the issue of whether the sellers or their agent wilfully and knowingly misrepresented the acreage involved. This issue was effectively eliminated when the complainant, E. W. Evins, testified as follows:

"Q. Well, let me finish . . . an honest mistake on their part too they've done nothing to defraud you you say?

A. We didn't intimate that they had . . . I mean, we didn't say that they had and I never intended to."

Complainants complain that the Chancellor:

". . . did not consider that the division of the property into two tracts purportedly containing ninety-eight (98) to one hundred (100) acres in the larger tract and thirty two (32) acres in the smaller tract was not necessarily the same division of the property as was contained in Exhibits #7 and #8 to the testimony of Martin S. "Easy" Scott.

*Exhibits #7 and #8 to Testimony of Martin S. "Easy" Scott.*

"This Assignment of Error is important because the Defendants sought to prove that the division of the property after the sale conformed to prior deeds in the chain of title calling for 103 acres in the larger tract and 27 acres in the smaller tract and that in making such division the Defendants relied upon such old deeds.

"The Complainants submit that the division of the property which was made for sale purposes was not the same as that contained in the two old deeds referred to in the chain of title and that the proof does not support this contention and even if the division of the property is according to the two old deeds the said deficiency still exists."

■ Here, the complainants apparently insist that the deed which they accepted did not properly identify the particular property sold at the auction. If there is other property in existence which was in contemplation at the time of the sale, but which was omitted from the deed, complainants were under a duty to refuse the erroneous deed, and certainly were under a burden in the present case to produce evidence of the existence of such omitted property and to demand a deed for same.

On the contrary, the entire theory and basis of complainants' case is that there are not, were not, and never have been 98 or 100 acres in Tract 1, and that the effort to sell, convey and accept a deed to 98 acres represented a mutual mistake.

There is no evidence in this record to justify a reversal on the ground that the deed to complainants did not describe and convey all of the land which was available for sale and was sold as Tract 1.

The fifth assignment of error is respectfully overruled.

■ The sixth assignment of error complains of the consideration of hearsay statements attributed to Ed Nixon, since deceased, in regard to the number of acres in each tract. The statements of Mr. Nixon to Mr. Scott were material only to show Mr. Scott's good faith when he announced before the sale that Mr. Nixon had stated the acreage to him. Otherwise, Mr. Nixon's statement is valueless in determining the issues herein. If the tract in fact contained 98 acres, then there was no shortage. If the tract in fact contained only 61.4819 acres, as insisted by complainants, then it did not contain 98 acres, regardless of Mr. Nixon's statement. The uncontroverted evidence shows that the correct acreage was and is 61.4819, hence any statement of Mr. Nixon otherwise is valueless except on the issue of good faith, which, as stated, has been eschewed by the complainant, Evins.

The sixth assignment of error is respectfully overruled.

The seventh assignment of error complains of the allusion to a sale between Charles B. Martin and complainants. The Chancellor's opinion states:

"My determination of the issues would be the same as they are even if Mr. Martin's name had never entered the picture. To put it another way, my findings would

be the same even if it was proven or stipulated that both complainants were bidding together at the sale and became the successful bidders. . . ."

This Court agrees with the Chancellor that the disposition of this cause should be the same whether complainants dealt directly with the sellers or Mr. Martin to some degree intervened as an intermediate buyer-seller. Ultimately, the sellers executed a deed to complainants and accepted complainants as their purchasers.

The seventh assignment of error is respectfully overruled.

The remaining assignments (1, 2, and 8) present the merits of the controversy. First a review of available authorities is in order.

Complainants cite Bond v. Jackson, 4 Tenn. (3 Haywood) 190 (1817), wherein the description in the deed contained the words, "to contain 840 acres." The Supreme Court allowed pro-rata mitigation of purchase price for a shortage of 100 acres and said:

"It is usual and proper, where such is the intent, to state on the face of the deed that the contract is to remain, though the quantity be more or less; and when that is not expressed, the fair inference is that a deficiency in the quantity will either dissolve the obligation of the purchaser if a deed be not yet given, or, if given, it will entitle him to compensation. In the present instance, this idea is much strengthened by an expression used in the deed; after describing the lands by metes and bounds, it adds, to contain 840 acres;

this amounts to a stipulation that it does contain the quantity mentioned. The calculation founded on that quantity. . ." 4 Tenn., p. 190,

Complainants also cite Barnes v. Gregory, 38 Tenn. (9 Head) 231 (1858) wherein the deed stated that the tract contained "thirty acres more or less." Complainant charged that the tract contained an excess of 15 acres and that the sale was " by the acre." Defendant insisted that the sale was in gross. The Court allowed complainant to recover for the excess acreage, and said:

"The proof leaves no doubt upon the mind as to the contract having been a sale by the acre, and not in gross. It is clearly established that it was so understood by both parties, both by their actions and declarations, though the defendant sometimes denied it. The fact that a survey was to be made before the execution of the last note for the consideration, and the deed is almost conclusive of that fact. It is entirely so when combined with the declarations of both parties at, before, and after that time.

\*    \*    \*    \*    \*    \*

". . . The deed, perhaps, gives the boundaries correctly according to the survey, and needs no change; but the statement of the quantity of land contained in those limits is inaccurate, and so is the amount of the consideration. That the consideration stated in a deed, in only prima facie, and may be controverted by parol, has been often held. This deed is silent as to the disputed question, whether the sale was by the acre or in gross. To establish the former, and obtain pay for the

whole quantity sold, is the object of the bill. This fact may be made out by parol or extrinsic written evidence. . . ." 38 Tenn. pp. 235, 236, 237.

Complainants further cite Bigham v. Madison, 103 Tenn. 358, 52 S.W. 1074 (1899), wherein the Supreme Court reviewed extensive authorities, granted a rescission and said:

". . . there was no false and misleading representations made by the defendants, known to them to be false, and hence, no actual fraud, but the facts as found by it make out a clear case of mutual mistake as to *the location of the lines*, a matter material to the contract, not only as to the quantity of land, but as to the location of the lines, and *the specific lands* the vendors thought they were selling and the vendee thought he was buying, and which were pointed out.

\* \* \* \* \* \*

"Now, in the case at bar, we have a sale of land described in the deed as '25 acres, more or less.' The land is shown, the lines are pointed out, the corners located, and while the vendor said in substance that he would not guarantee where the lines and corners were, still he assures the vendee they would embrace the *land he saw, and where he wanted to locate, and did locate his house. There was a superior title to 50 per cent, or more in quantity, and still more in value of the land.*" 103 Tenn. pp. 361, 366, 367, 52 S.W. p. 1075. (Emphasis supplied)

In Rich v. Scales, 116 Tenn. 57, 91 S.W. 50 (1905), cited by complainants, the deed recited a consideration of $5,000.00 for a tract described as follows:

"Being a triangular shaped lot in South Nashville, fronting on the west side of the N., C. & St. L. Ry. and being bounded on its westerly side by Brown street and on its southerly side by Houston street. Said lot has a frontage on Brown street of 315 feet and on Houston street of 512 feet." 116 Tenn. p. 61, 91 S.W. p. 50.

Upon survey, it was found that encroachment of the railroad by adverse possession had reduced the measurements of the lot from 315 feet to 279 feet, from 512 feet to 443 feet, and from 60 feet to 52.4 feet and that the overall area of the lot was 18,842 square feet less than that conveyed. It was shown that, before buying, purchaser had gone upon the lot and examined its boundaries.

The Supreme Court denied relief to the purchaser and said:

"It is insisted that the case of Bigham v. Madison, supra, fully sustains complainant's contention. This is an erroneous view. In that case the deed purported to pass title to 25 acres of land which it described. The location of the supposed lines was pointed out; but both the vendor and the vendee were mistaken as to the true location. It subsequently developed that one-half of the land covered by the calls was held by a superior title. It did not appear that there was any adverse possession of any part of the land at the time the conveyance was executed, either known to the vendee

or existing in fact. It turned out that the vendee did not obtain the land he intended to buy and which the vendor intended to sell. Upon this state of facts the vendee was rightly granted a rescission. That was a very different case from the one now before the court." 116 Tenn. p. 70, 91 S.W. p. 53.

Both plaintiffs and defendants cite Acuff v. Allen, 28 Tenn.App. 451, 191 S.W.2d 196 (1945), in which the written contract of sale described land "said to contain 140 acres more or less," but the deed conveyed "112.2 acres, more or less." A survey showed the actual acreage to be 106.8, a shortage of 31.4 acres or about 29 per cent. The seller had been informed that the farm contained 140 acres and his real estate agent had represented that there were 140 acres. However, former deeds to the farm, of which one was furnished to the purchaser's attorney, called for only 112.2 acres. This Court reversed a decree for the complainant purchaser, and dismissed the suit, saying:

"[2, 3] The contract expressed the price at a lump sum, and not per acre. The theory of this suit practically concedes this a sale in gross and not by the acre. The entire record evidences a sale in gross. We, therefore, find as a fact that it was a sale in gross and not by the acre. In the absence of actual fraud or such a gross deficiency in acreage as to shock the conscience of the court a sale in gross is a sale at hazard as to quantity.

\* \* \* \* \* \*

". . . In the latest opinion on the subject, Mr. Justice Chambliss in Smith v. Grizzard, 149 Tenn. 207, 212,

259 S.W. 537, 538, says: 'the rule is that, where it clearly appears that the sale was made in gross, and not by the acre, and the purchaser not only had every opportunity afforded him to ascertain and satisfy himself definitely as to the extent and location and quantity and boundaries of the lands purchased, but actually did so, going personally upon the property and viewing it from every angle, he has no right to recover for a deficiency, unless actual fraud is proven, or the circumstances and the deficiency are such as to raise a presumption of fraud. The expression frequently used in this connection, ''so great as to shock the conscience of the court,'' occurs always in direct association with the suggestion of a presumption of fraud. In other words, relief will be granted where a deficiency is so great as to shock the conscience of the court because a presumption of fraud must thereupon arise.'

\* \* \* \* \*. \*

''. . . . Waters v. Hutton, 85 Tenn. 109, 116, 1 S.W. 787, 789, applies:

'' ' ''The case is one of a purchase of a tract of land in the gross, after a personal examination by the vendee, who had gotten all that he wished or intended to buy, or that the vendor intended to sell . . .

'' ' ''No one who has the precise thing expected and intended to be purchased, can have, in a court of equity, an abatement in the price.'' '

\* \* \* \* \* \*

", . . 'It is an ancient and widely, if not universally, accepted principle of the law of deceit, that, where representations are made respecting a subject as to which the complaining party has at hand reasonably available means for ascertaining the truth and the matter is open to inspection, if, without being fraudulently diverted therefrom, he does not take advantage of this opportunity, he cannot be heard to impeach the transaction on the grounds of the falsehoods of the other party. . . .

\*    \*    \*    \*    \*    \*

" '. . . This rule in its general statement applies to such a case as that before us. It is easy for one disappointed in the fruits of a trade to imagine, and perhaps persuade himself, that the cause of his loss is the deceit of the other party, rather than his own want of judgment.'

"The Massachusetts rule is: 'that where the seller of real estate, shows upon the face of the earth its true boundaries and does not fraudulently dissuade full examination and measurement and the estate is not so extensive or of such character as to be reasonably incapable of inspection and estimate, and there is no relation of trust between the parties, the purchaser has no remedy for a misrepresentation as to the area alone.'

"In practice this statement is merely a different way of stating the rule as applies in this state. Under the above stated rule the courts have sufficient latitude to enforce the 'shock the conscience of the court' rule

applicable in Tennessee." 28 Tenn.App. pp. 456-460, 191 S.W.2d pp. 198, 199.

From the foregoing review and quotations from Acuff v. Allen, it will be seen that the Chancellor had good reason to state that the facts of the present case are stronger than those of Acuff v. Allen. In the present case, there is no suggestion or claim of actual fraud. The sellers' agent stated accurately the information which was available through former deeds and statements of a former owner. There is no suggestion or claim of any knowing misrepresentation or concealment concerning the amount of land. The opportunity of examination of the boundaries was freely available to and partly utilized by the purchasers.

The percentage of shortage (about 37 per cent) is indeed greater than the percentage of shortage in any reported Tennessee decision which denied relief to the purchaser. The size of the percentage is sufficient to "shock the court," but it is the intelligence rather than the conscience of the Court which is shocked, for the shocking aspect of this transaction is that two bankers, accustomed to dealing in real estate, would purchase a farm without examining its boundaries.

As stated in Acuff v. Allen, supra, the expression "shock the conscience of the court" is employed in connection with the "suggestion of a presumption of fraud." A presumption of fraud must be indulged, or not indulged in the light of all surrounding circumstances. The surrounding circumstances of the present case do not in any way suggest fraud, indeed the claim of fraud has

been expressly disclaimed under oath by one of the complainants.

Under these circumstances, a 37 per cent shortage in a "gross sale" standing alone, could hardly be said to raise a presumption of fraud.

Next arises the question of whether a mutual mistake of 37 per cent as to the acreage contained in a gross sale is sufficient to invoke the intervention of equity to grant relief. An examination of all of the above cited Tennessee authorities, and many others, discloses that where there is no evidence of fraud or concealment by seller, relief from shortage of acres must be based either (a) upon a sale by the acre (or other unit) or (b) upon a mutual mistake as to the identity, rather than the quantity, of land involved.

For example, in the cases of Barton v. Bird, 1 Tenn. 66 (1804); Bond v. Jackson, supra; Barnes v. Gregory, supra; Neal v. Allison, 1 Tenn.Cas. (Shannon) 146 (1859) and Caughron v. Stinespring, 132 Tenn. 636, 179 S.W. 152, L.R.A.1916C, 403, there was a specific finding of a sale by the acre as justification for granting relief.

In Collins v. Smith, 38 Tenn. 251 (1851); Bigham v. Madison, supra, and Moses v. Wallace, 75 Tenn. 413 (1881), there was defect in title or other infirmity which deprived the purchaser of a particular specific part of the land which both parties intended to be transferred, and, on this basis, relief was granted.

In Tinsley v. Hearn, 136 Tenn. 586, 191 S.W. 127 (1916) relief was granted for a "deficiency . . . of the entire boundary represented so as to justify an inference of

mutual mistake . . ." As stated in Acuff v. Allen, supra, the opinion in Tinsley v. Hearn "does not set forth a sufficient statement of facts . . ." and "Our subsequent cases . . . have held otherwise."

In Breast v. Waddell, 2 Tenn.Civ.App. 544 (1911) there was a sale of land in gross by a man of means, experience and shrewdness, to an elderly woman "of limited experience in measurements of lands and trades with respect thereto." There was an intimate friendship between the seller and buyer. The land was of such character that the buyer could not conveniently observe the boundaries, and she relied upon the seller's representation that 100 acres would be included in the sale. As a matter of fact, the deed conveyed slightly more than 22 acres.

Relief was granted with the following statement:

"We are unable to concur in the view that this was an outright sale in gross. But if it should be treated as a sale in gross, we are unable to concur in the view that complainants got approximately the tract of land which was in a general way pointed out to them, but Mrs. Breast was not shown the exact boundaries, nor was she put in a position where she could have ascertained the exact location of the territory which she was about to purchase." 2 Tenn.Civ.App. p. 547.

▇ The last cited case illustrates the circumstances under which relief may be granted from a deficiency in sale in gross; i.e., (a) a deficiency such as to shock the conscience of the court, accompanied by (b) other compelling circumstances, such as inequality of capacity and

experience, confidential relationship, the nature of the land and dealings of the parties.

In the present case the Chancellor found that the sale was *in gross* and not *by the acre*. The Chancellor found from all the circumstances that the shortage of acres was not such as to create a presumption of fraud. These findings of fact come to this Court accompanied by a presumption of their correctness unless the evidence preponderates otherwise. Sec. 27-303, T.C.A. The evidence does not preponderate otherwise, hence the findings are presumed correct and are made the findings of this Court.

Inherent in the conclusions of the Chancellor is a finding that there was no mutual mistake as to the identity of the land intended to be transferred. There is no evidence of any mistake in this regard, hence this finding of the Chancellor was correct.

Although there was an admitted mutual mistake as to the number of acres contained in the tract conveyed, such a mistake as to such a fact is not ground of relief under the circumstances, and the Chancellor correctly denied relief on this ground.

The admitted 37 per cent shortage in the expected quantity of land purchased does excite the sympathy of this Court and appeal to the sense of justice. Nevertheless, the rules heretofore pointed out preclude any relief to complainants. It is some consolation to the members of this Court to remember that complainants are victims of their own inattention; that the defendants were wholly innocent of knowingly misleading complainants, and that,

at this late date, it would be most difficult to say what the complainants would have been willing to pay and what defendants would have been willing to accept for their farm if the true acreage had been known to all.

The decree of the Chancellor, dismissing complainants' suit, is affirmed; and the costs of this appeal are taxed against the complainants-appellants.

Affirmed.

Shriver, P.J.(M.S.), and Puryear, J., concur.