**Victor Parker WILLIAMS and Hazel B. Williams, Plaintiffs-Appellants,**

v.

**Robert L. DANIEL and Willie L. Daniel et al., Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

June 25, 1976.

Certiorari Denied by Supreme Court Aug. 30, 1976.

Keaton & Turner, Hohenwald, for plaintiffs-appellants.

Edwin C. Townsend and Robert N. Townsend, Parsons, for defendants-appellees.

## OPINION

SHRIVER, Presiding Judge.

### The Case

This is a boundary line dispute concerning the location of the east boundary line of the property of plaintiffs-appellants and the west boundary line of the property of defendants-appellees.

The parties will be referred to as plaintiffs and defendants, as they appeared in the Court below, or as appellants and appellees.

The plaintiffs filed their original bill in the Chancery Court of Perry County on January 3, 1970 wherein they charge that in the year 1968 defendants, Robert L. Daniel and wife, built a woven wire fence west of the defendants' west boundary line, thereby enclosing and claiming land which rightfully belongs to the plaintiffs, asserting that said fence was built along the true boundary line between the lands of the parties, which fact plaintiffs deny.

The bill prays that the location of the common boundary line between the lands of the parties be fixed and declared by decree of the Court, and for an injunction restraining defendants from interfering with plaintiffs while they are engaged in surveying the line of the parties.

The answer of defendants, Robert L. Daniel and wife, denies that the location of the fence built by them encloses or encroaches on any land belonging to the plaintiffs. Defendants plead adverse possession and the Statute of Limitations, stating:

". . . These defendants further aver and plead that any cause of action, if any there be, accrued more than seven years before said bill was filed, and more than ten years before said bill was filed, and more than twenty years before said bill was filed, and these defendants rely on the statutes of limitations of seven, ten and twenty years in bar thereof."

Defendants further aver that they and their predecessors in title have actually cultivated such land adapted for cultivation up to said line and have exercised actual possession thereof for more than seven years, ten years, and for more than twenty years prior to plaintiffs bringing this action.

Assuming the character of cross-plaintiffs, the defendants pray for a dissolution of the injunction and that the Court appoint an independent surveyor to locate the line between the parties, and that the west boundary as described in their deed from V. A. Bandy, et ux, recorded in the Register's Office of Perry County, Tennessee, be declared by decree of the Court to be the true and correct boundary between the parties.

By consent decree, the Farmers Home Administration was dismissed as a defendant and the United States of America substituted as a defendant.

The answer of the United States asserts that Daniel and wife conveyed their land to a Trustee to secure the payment of certain indebtedness owed the Farmers Home Administration but takes no position with respect to the dispute between plaintiffs and defendants.

The case was tried July 23, 1971 on depositions and documentary evidence before Chancellor John H. Henderson (now retired), whose term of office expired August 31, 1974. However, the Chancellor took the cause under advisement and on August 29, 1975 filed his Memorandum Opinion deciding the issues in this cause. Judgment, in accordance with the Opinion, was entered October 27, 1975 establishing that the true boundary between the parties is that which is shown by the present fence as constructed by the defendant, Robert L. Daniel.

From the decree of the Chancellor implementing his Memorandum Opinion, plain-

tiffs duly perfected their appeal to this Court and have assigned errors.

### Assignments of Error

There are two assignments, the first of which is to the effect that the Opinion of the Chancellor and the judgment entered thereon on October 27, 1975 are void.

Assignment No. 2 is that the Court erred in declaring the true boundary between the parties is that shown by the present fence as constructed by the defendant, Robert L. Daniel, since the evidence preponderates against the findings of the Court as to the location of the common boundary line.

■ Addressing ourselves to Assignment No. 1, it is asserted by plaintiff that the term of office of Chancellor Henderson expired August 31, 1974 and that his power and authority as to cases pending before him on the date he vacated his office were extended for only a period of sixty days, or until October 30th, 1974, under the statute, T.C.A., Section 17–116.

It is further asserted that, by letter dated October 17, 1974, Chief Justice William H. D. Fones assigned Judge Henderson to conclude this case along with four other cases which he had under advisement and a copy of said letter is attached to counsel's brief.

At this point it is pertinent to observe that counsel for both parties assert that there is no question raised as to the fact that Chancellor Henderson was designated by Chief Justice Fones to complete this case along with several others and, while a letter of designation does not appear to have been duly filed for record in the Court, yet its contents are supplied and vouched for by counsel for both parties, a copy of said letter being as follows:

"The Honorable John H. Henderson
Revere Lane
Franklin, Tennessee   37064

Re:  Williams v. Daniel (Perry Chancery Court)
Richardson v. McLemore (Perry Chancery Court)
Reeves v. Talley (Lewis Chancery Court)
Cardell v. Rochkes (Lewis County Chancery)
White v. Lynn Creek Association (Williamson County Chancery)

Dear Judge Henderson:

It is my understanding that the above cases were previously heard by you prior to your retirement on September 1, and that decisions have not as yet been rendered. In view of this fact, and to prevent any complications arising, I am hereby assigning you, under the appropriate statutory authority, to conclude these matters at your earliest convenience.

I appreciate your willingness to perform this service.

With best wishes, I am,
                Sincerely,

                    /s/ Wm. H. D. Fones, C. J.
cc:  Judge T. Mack Blackburn"

It is asserted by counsel that the obvious question presented is whether the Chief Justice, under his authority to assign Judges or otherwise, had the authority to extend the sixty days provided for by Section 17–116, T.C.A., which provides that whenever any Trial Judge shall vacate his office for any cause other than death or permanent insanity, he shall have and retain, as to cases pending before him, the trial of which was begun prior to his vacation of office, all the powers in connection with said cases which he might have exercised had such vacation of office not occurred, *provided that his powers in this respect shall not extend beyond sixty days from said date of such vacation of office.*

While it would seem that orderly procedure would dictate that the letter of designation by the Chief Justice should be entered on the Minutes of the Trial Court or on the Minutes of the Supreme Court, we have no guidelines in respect to this matter and will simply presume, in the absence of any showing to the contrary, that the designation was in regular order and that Chancellor Henderson properly acted under those orders.

Counsel assert in their briefs that the only decision that they were able to find construing Section 17–116 is *Bedford County Hospital v. County of Bedford,* 42 Tenn. App. 569, 304 S.W.2d 697 (1957) where the Court said:

"If T.C.A. § 17–116 does apply, and we hold it does not;  still, the sixty days'

limitation would be merely directory. It seems this is the only construction which could be reasonably placed upon the statute. A Chancellor might hear a case with fifty volumes of the record. It might take more than sixty days to prepare the opinion. Surely the statute should not be construed so as to require the case to be put on the trial docket just like it had never been tried and have the case heard again from the beginning. Judge Smartt properly took jurisdiction of the case and properly held it."

It is asserted that the foregoing statement of this Court, through the late Judge Hickerson, was dictum, nevertheless, it states principles which seem to be sound.

It is interesting to note that in *Trapp v. McCormick, et ux,* 175 Tenn. 1, 130 S.W.2d 122 (1939), in an opinion by the late Mr. Justice Chambliss, our Supreme Court states that counsel raised the procedural question that the Chancellor heard the case at his regular term in December and took the cause under advisement and did not dispose of it until the following February 11th, at which time his order was made instructing the Clerk and Master to enter his decree on the Chamber Minutes of the Court. It is thus insisted that the decree was void since it was not entered within a thirty day period as fixed by the statute, Code Section 10–501, which authorizes Chancellors to hold under advisement cases tried in any term and enter decrees therein subsequently. The Opinion continues:

"It is true that this statute does contain a limitation of the time to thirty days within which such a decree may be entered, without the consent of counsel, and appellees reply that this statute should be treated as directory only. We do not find this statute to have been construed by this Court in any reported opinion. It may well be doubted, in the first place, that it is within the power of the Legislature to thus control the action of the Court, it being in the nature of an encroachment upon the judicial prerogatives. In the second place, the general rule undoubtedly is that those statutory provisions which relate to the mode, or time of doing the act to which the statute applies, are not held to be mandatory, but directory only."

The opinion then cites *Huffines v. Gold,* 154 Tenn. 583, 288 S.W. 353 (1926), and *Richardson v. Young,* 122 Tenn. 471, 125 S.W. 664 (1909), and concludes by saying that the statutory provisions which may thus be departed from with impunity, without affecting the validity of statutory proceedings, are usually those which relate to the mode or time of doing that which is essential to effect the aim and purpose of the Legislature or some incident of the essential act, and states:

"We are of the opinion that, consistently with these rules, the provisions of the statute before us may properly be held to be directory only."

In line with the foregoing, we overrule Assignment No. 1.

■ *Assignment No. 2* is as follows:

"The Court erred in decreeing that the true boundary between the parties is hereby declared to be that shown by the present fence as constructed by the defendant, Robert L. Daniel.

The evidence preponderates against the findings of the Trial Court as to the location of the common boundary line."

Counsel for the appellees, in his Reply Brief and Argument, gives a history of the lands in question here and the transactions involving same which are pertinent to this inquiry and which we find to be accurate and which may be summarized as follows:

The defendants-appellees acquired title to their tract of land by a deed from Vet A. Bandy, brother of the plaintiff Hazel B. Williams, on November 22, 1965, wherein the tract of land was described by metes and bounds and was further described as comprising 190 acres, more or less.

Bandy and plaintiff Hazel B. Williams acquired title to said lands from Elmer L. Spencer on February 8th, 1947. Hazel B. Williams conveyed her one-half interest in said land to Vet A. Bandy by deed dated

July 30, 1950. Elmer L. Spencer had acquired title to said tract on October 14, 1942 from the heirs of J. W. Bandy.

It is seen by the record that all of the foregoing deeds describe the beginning point of defendants' deeds and the boundary line in dispute as:

"Beginning on a hickory in a cross-fence near the public road and runs thence South 33 degrees West, with cross-fence 93 poles to a hickory on the back side of the field on the hill side."

It appears from the record that this beginning point and the division line described therein dates back to a Division Deed between the Bandy brothers, J. W. Bandy and W. J. Bandy, dated and recorded on September 17, 1896. It further appears that the cross-fence was set up as a boundary line between them, with W. J. Bandy taking the land lying east of the division line, which is the tract now owned by Daniel, while J. W. Bandy took the lands lying west of the cross-fence beginning at a hickory, which is the tract now owned by Williams. And, it appears that the Bandy Division Deed divided a 334 acre tract, in addition to three other tracts.

When the lands were sold to the defendants Daniel by Vet A. Bandy in 1965, surveyor Clyde Miller was employed to make a survey of the land and, apparently, the deed from Bandy to Daniel was based on the Miller survey.

While there is a discrepancy in the number of acres contained in the tract in question as opposed to the number of acres referred to in the deed, nevertheless, it appears that when the acreage in the tract in dispute which amounts to about 100 acres is subtracted from two hundred and eighty-five which is the number of acres recited in the deed from Bandy to Daniel, the remainder is one hundred and eighty-five acres which compares with the one hundred and ninety acres referred to in the deeds which is a circumstance to be considered as to the accuracy of the survey which fixed the division line as insisted upon by defendants-appellees.

An examination of the deeds in question and the testimony of witnesses at the trial indicates that the deeds in the chain of title to both tracts at issue were conveyances in gross and not by the acre. It also appears that other considerations may have entered into the decision of the parties to run the boundary line where they did, that is, such considerations as the fertility of the soil involved, its location with respect to roads, springs or sources of water, and its availability for cultivation. Moreover, the general rule with respect to the question of acreage as opposed to the calls in a deed is to the effect that it is resolved primarily as a question of intention to be gathered from the deed and that where a deed contains an adequate particular description of the property conveyed, it will not be controlled by a recital therein of the quantity or number of acres unless it clearly appears that it was the intention to convey only a definite quantity, and it is said by some authorities that quantity is the least certain of all of the elements of description which are usually found in a deed.

As was held by this Court in *Evins v. Price*, 63 Tenn.App. 627, 477 S.W.2d 204 (1971), where a sale of the property was in gross and not by the acre, purchasers had the opportunity to examine the land and there was no showing of fraud, a mutual mistake as to the number of acres contained in the tract conveyed did not warrant reformation of the deed and partial refund of the purchase price or a rescission.

The case at bar is before us for trial de novo on the record since it was heard by the Chancellor without the intervention of a jury and a consideration of the evidence introduced in this cause leads us to the conclusion that the evidence does not preponderate against the decision and conclusions of the Chancellor.

An impressive number of witnesses testified in this case but the large number of witnesses testifying as to the location of the boundary lines between these parties as having been established for many years is very impressive.

We do not deem it necessary to review the testimony of the several witnesses who testified as to the location of the boundary line.

Particularly impressive is the testimony of Elmer L. Spencer, a witness for the appellees who was 68 years old at the time of the trial and a previous owner of the lands now owned by the defendants Daniel. He stated that he had the land surveyed in 1942 when it was purchased from the Bandy heirs and referred to the hickory tree now destroyed as located on the side of the road and that the cross-fence was in place and the lines marked and painted. He further testified that the dividing line between the tracts now owned by plaintiffs Williams and the defendants Daniel had been established all of his life and that he has been familiar with them since the survey was completed in 1942. He also referred to the rock at the northwest corner of the Daniel tract and stated that there had never been any question as to the location of the boundary line between Daniel and Williams and that it was as shown on the Garrett survey.

Finally, another compelling reason for affirming the Chancellor is that the answer and cross-bill of defendants-appellees asserts that they and their predecessors in title have actually cultivated such lands adapted for cultivation up to the said line and have exercised actual possession there-of for more than seven years, ten years, and for more than twenty years prior to plaintiffs bringing said action and they pled the foregoing Statutes of Limitation.

In *Webb v. Harris,* 44 Tenn.App. 492, 315 S.W.2d 274 (1958), the seven year statute was pled and applied in a boundary line dispute even though title was not deraigned from a state grant or a common source of title.

And in *Pyron v. Colbert,* 46 Tenn.App. 287, 328 S.W.2d 825 (1959), the seven year statute was applied and upheld.

And in *Lee v. Harris,* 188 Tenn. 373, 219 S.W.2d 892 (1948), the ten year statute was held to be applicable in an action for reformation of a deed on the ground of mistake.

We see no escape from the force and effect of the Statute of Limitations as pled by the defendants in this cause.

For all of the foregoing reasons, it results that both assignments are overruled and the judgment of the Chancellor is affirmed.

AFFIRMED.

TODD and DROWOTA, JJ., concur.