WILLIAM CAUGHRON et al. v. J. B. STINESPRING et ux.*

(Knoxville.   September Term, 1915.)

1. **VENDOR AND PURCHASER.**   Actions for deficiency.   Evidence.

Evidence *held* to show that complainants purchased a farm by the acre and not in gross, and so could recover for deficiency in acreage.   (*Post, pp.* 639-641.)

2. **BROKERS.**   Liability of principal for broker's statements.

A landowner who makes a sale through a duly authorized broker is bound by the broker's statements as to the quantity of the land.   (*Post, pp.* 641-643.)

3. **VENDOR AND PURCHASER.**   Deficiency.   Liability for.

Though purchasers of land visited the property itself and looked over the boundaries, the fact that they did not discover a deficiency of fifty-seven acres will not excuse the vendors, as the purchaser could hardly be expected to discover a shortage in a tract of six hundred acres.   (*Post, pp.* 641-643.)

4. **VENDOR AND PURCHASER.**   Deficiencies.   Recovery.

Where a sale is in gross, no compensation will be granted for a deficiency, unless the deficiency is so great as to justify a conclusion of fraud or mistake equivalent to fraud, but if the sale is by the acre, the purchaser may recover for a deficiency at the agreed price per acre.   (*Post, pp.* 643-645.)

Cases cited and approved:   Miller v. Bentley, 37 Tenn., 671; Seward v. Mitchell, 41 Tenn., 89; Barnes v. Gregory, 38 Tenn., 230; Horn v. Denton, 34 Tenn., 125; Deakins v. Alley, 77 Tenn., 494; Rich v. Scales, 116 Tenn., 65.

5. **VENDOR AND PURCHASER.**   Deficiency.   Statements in deed.

To recover for misrepresentation as to the quantity of land conveyed, it is not necessary that the acreage be stated in a deed, but this may be shown by extrinsic evidence. (*Post, pp.* 643-645.)

---

*As to writ of *ne exeat* as imprisonment for debt see note in 34 L. R. A., 671.

Caughron v. Stinespring.

6. **EVIDENCE.    Parol evidence.    Contract of sale.    Deficiency. Recovery.**

In a suit to recover for a deficiency in a parcel of land, the price per acre may be shown by parol, though not stated in the deed, the real contract between the parties governing. (*Post, pp.* 643-645.)

7. **VENDOR AND PURCHASER.    Deficiency.    Actions.    Evidence.**

In a suit to recover for a deficiency in a parcel of land, parol evidence, showing the terms of the contract as to the price and number of acres, must be clear and certain; those matters not being stated in the deed.    (*Post, pp.* 643-645.)

8. **CONSTITUTIONAL LAW.    Imprisonment for debt.    Writ of ne exeat.**

There was a deficiency in a parcel of land, which was sold by the acre.    The vendor removed from the State and returned to collect notes for the purchase price.    These were on his person. Shannon's Code, sec. 6246, authorizes the issuance of a writ of *ne exeat.    Held,* that in such case, as the vendor might remove and negotiate the notes, thus depriving the purchaser of his remedies, the writ of *ne exeat* would issue; the issuance in such case not being equivalent to an imprisonment for debt prohibited by Const., art. 1, sec. 18.    (*Post, pp.* 645-647.)

Cases cited and approved:    Smith v. Koontz, 5 Tenn., 189; Cresswell v. Smith, 76 Tenn., 699.

Code cited and construed:    Secs. 6092, 6093, 6246 (S.).

Constitution cited and construed:    Art. 1, sec. 18.

9. **NE EXEAT.    Issuance of writ.    Right to.**

The writ of *ne exeat* will not issue for demands uncertain or contingent, and either the demand or its enforcement must be of an equitable nature.    (*Post, pp.* 647, 648.)

10. **NE EXEAT.    Writ.    Pleading.**

A bill, praying the issuance of a writ of *ne exeat*, must by positive allegations or by facts showing the intention, set forth defendants' intended departure from the State and the probability of loss of rights.    (*Post, pp.* 647, 648.)

FROM McMINN.

Appeal from the Chancery Court of McMinn County.—V. C. ALLEN, Chancellor.

JONES & DAVIS, for appellants.

N. Q. ALLEN, for appellees.

MR. JUSTICE FANCHER delivered the opinion of the Court.

This suit was brought to recover damages for a deficiency in acreage in a tract of land conveyed by the defendants to complainants, upon the ground that the land was sold by the acre at an agreed price per acre. The original bill undertook a recovery, notwithstanding the fact that the deed of conveyance did not recite the sale by the acre, upon the ground that the original contract of sale entered into between the parties contemplated a sale by the acre, and that it is competent to look to the original contract; the deed being a mere evidence of the original agreement.

An amendment to the bill was filed later, seeking to reform the deed upon the ground that by mistake or fraud the instrument did not set forth the real contract of the purchase. The deed contained general warranties covenants of seisin, etc. It contains a description of the land by metes and bounds, except that

on some of the lines the distance is not given; the calls being for lands of other owners or other objects.

The property in question, belonged to Mrs. Lou Stinespring, and the deed was executed by her and her husband, J. B. Stinespring to the complainants. The grantors were, at the time, living upon the land in question, located in McMinn county, Tennessee, and complainants were residents of Blount county, Tennessee. Most of the negotiations in regard to the sale were carried on between the complainants and one C. F. Keith, Jr., who was the agent of defendants, they having jointly authorized Keith to represent them in the sale of their farm and appointed him by written contract as their agent. In this contract the land was described as containing six hundred acres, of which four hundred acres was cleared and two hundred acres in timber.

Defendant Stinespring denies that he had any understanding that the land was sold by the acre, but the agent Keith, and both of the complainants, grantees in the deed, testified positively that the understanding was that complainants were buying six hundred acres of land at $50 per acre.

The deed of conveyance does not set forth the amount of the purchase price, it appearing that Stinespring did not want to put on the face of the deed the consideration to be paid, and the purchasers probably did not want the deed to show the real consideration on account of a desire to keep the taxes as low as possible.

The contract of agency was signed by both Mrs. Stinespring and her husband, appointing Chas. F. Keith, Jr., their exclusive agent to procure a purchaser or sell the land. Keith testified that Stinespring told him that the farm contained over six hundred acres and that before the deed was made to complainants, he, Keith, told Stinespring the terms upon which the land was sold; that it had been sold for $30,000, based on six hundred acres at $50 per acre. He testified explicitly that he told the purchasers there were six hundred acres in the farm listed to him by Stinespring. Complainants Caughron and Goins testified that they relied upon the statement that they were to get six hundred acres of land, and that they would not have bought the farm if they had known that it contained less than six hundred acres. Defendant Stinespring testified that after the sale had been made, Keith told him that he had sold the farm for $30,000, and the terms upon which the sale was made. He and his wife thereupon executed the deed.

The county surveyor of McMinn county was employed by the complainants after their purchase of the farm to make a survey and calculation of acreage, which was done, and it was determined that the farm contained only 542.2 acres. The surveyor stated that it was impossible to follow the calls of the deed, because they were improperly given and many of them were short of the distance called for. He was asked as to each call and each line given in the deed, and it was found that practically all of the calls were incor-

rectly given in the instrument. He testified that the lines were well established and the corners located.

From this testimony we are satisfied, and find as a fact, that the complainants purchased the Stinespring farm from the defendants through their regularly authorized agent at $50 per acre, and paid therefor in money and notes the sum of $30,000, upon the basis and the distinct understanding that the farm consisted of six hundred acres; that complainants relied upon this representation of acreage, and that they would not have given $30,000 for the farm if they had not believed that it contained six hundred acres. The defendants were bound by the statement of their agent as to this representation of acreage. Complainants looked over the land prior to their purchase. While it is evident as a practical proposition that they could see the body of land they were to receive and form an estimate of its size and value, yet it is also apparent, that although the deficiency in acreage, being 57.7 acres, was sufficient in amount to be material in the contract, yet without an actual survey a purchaser could ordinarily be deceived as to the number of acres in so large a tract of land.

After the sale of the land the defendants moved to the State of Florida. At the time the bill in this case was filed defendant J. B. Stinespring was in McMinn county temporarily. One of the notes for purchase money had fallen due, and it was alleged in the bill that a certified check had been given to defendant Stinespring in part payment of this indebtedness, which

132Tenn.41

payment had been made before they ascertained the shortage in acreage; that J. B. Stinespring had also taken the notes from the bank at Athens, and that he then had in his possession this note, upon which was then due $2,188.88; that the note is payable to J. B. Stinespring or order, and there is nothing on the face thereof to put any purchaser of the same on notice as to any equity or right that the complainants might have therein in the way of a set-off or counterclaim for the shortgage in acreage. They further averred that said defendant had no other property in Tennessee, and that he was fixing forthwith to leave McMinn county and go to his home in Florida and would not return, and was seeking to evade accounting to complainants for the shortgage in said acreage, and unless restrained by proper fiat would do so, and thereby defeat the effort to obtain redress or relief against the defendants.

In addition to the prayer for ordinary process, complainants also prayed for an injunction to restrain J. B. Stinespring from disposing of said note or said cashier's check; that he be compelled and enjoined to deliver said note and cashier's check to the court, to be held subject to the orders of the court, and that attachment issue, attaching the note and cashier's check. There was also a prayer that a writ of *ne exeat republica* issue to stay defendant J. B. Stinespring from departing from or leaving the State without the express permission of the court, and they sought to have

the said note credited with the sum of $2,890 for the shortage in acreage.

Fiat was obtained and writs issued for the injunction, attachment and writ of *ne exeat* prayed for, and all said writs were executed on the defendant Stinespring, except the writ of attachment; the return of this writ being search made and the property described therein not found. Later, by agreement and entry of order in the cause upon the application of said Stinespring, he executed a bond in the sum of $5,780, payable to the State for the use of complainants, conditioned that he should appear in person before the chancery court at Athens, Tennessee, and should abide by and perform the judgment of the court in this cause.

Complainants answered the bill, denying the material allegations therein. The chancellor upon final hearing dismissed the bill, and upon a motion for that purpose quashed and dismissed the writ of *ne exeat*. A reference was made to the master to report on the damages sustained by defendant for the wrongful issuance and execution of the writ of *ne exeat*. Complainants appealed upon the whole decree.

Where the sale is in gross the rule is that no compensation will be granted for a deficiency, unless such deficiency is so great as to justify a conclusion of fraud, or mistake equivalent to fraud. If a sale is by the acre and there is a deficiency, then the purchaser can recover for such deficiency at the agreed price per acre. For where the price is by the acre, if there is a misrepresentation made by the vendor and relied on

by the vendee as to acreage, producing a loss, such misrepresentation, whether intended so or not, has all the essential elements of legal fraud or mistake. It is not absolutely essential in order to recover for a misrepresentation as to the quantity of land conveyed that the acreage should be stated in the deed, but this may be shown by extrinsic evidence. Likewise the amount of the consideration may be shown by parol testimony. The deed is only the execution of the contract, and the real contract and understanding between the parties in this respect will govern on the question. *Miller* v. *Bentley,* 5 Sneed, 671; *Seward* v. *Mitchell,* 1 Cold., 89; *Barnes* v. *Gregory,* 1 Head. 230; *Horn* v. *Denton,* 2 Sneed, 125; *Deakins* v. *Alley,* 9 Lea, 494; *Rich* v. *Scales,* 116 Tenn., 65, 91 S. W., 50.

The present case is one where there is a deficiency in acreage material in amount and affecting the contract; and, although the deed does not disclose the real contract as to the number of acres nor the price per acre, yet under the authorities it is clear this may be shown by extrinsic testimony. Where a matter of this kind must be presented by parol testimony alone, a safe rule to lay down would be that the proof should be clear and unmistakable, because matters arising outside the written instrument should be clearly proven.

However, in this case we find no difficulty in coming to the conclusion that there was a clear understanding between the agent and the purchasers that the price was to be $50 per acre, and that the body of land contained six hundred acres. The grantors in

their contract with the agent had represented the farm to contain six hundred acres, and in addition one of the grantors had stated to the agent that he thought it would run out more than that.

It was not apparent from the face of the deed that there was less than six hundred acres of the land, because some of the calls did not state the distance from one point to another in the lines. Moreover, it was found by the survey that there was a considerable deficiency in the calls for distance where the deed recited such distance from corner to corner.

We think therefore the chancellor was in error in dismissing the bill.

Under the record the writ of *ne exeat* was properly issued. The defendant was a nonresident of the State and was only within the jurisdiction of the court temporarily. He had no property in the State except the items of personal property which were on his person. He was about to remove with this personal property beyond the jurisdiction of the court. It was very essential to have the defendant in the custody of the court so that its orders and decrees might be made to operate upon him. The injunction in such case would have been insufficient.

The writ of *ne exeat* is not frequently issued, because the occasion for its demand seldom arises. Nevertheless, it is directly recognized in our statute (Shannon's Code, sec. 6246) providing that injunctions, attachments, writs of *ne exeat,* and other extraordinary process shall be granted by the chancellor, circuit

judges, and judges of criminal and special courts. It is within the power and jurisdiction of the chancery court in a proper case to grant the writ. Gibson's Suits in Chancery, sec. 864; *Smith* v. *Koontz,* 4 Hayw., 189.

In *Smith* v. *Koontz,* the writ was issued in apprehension, based upon the character of the defendant and information that there was danger of the removal of the negro slaves who were the subject of the controversy.

The issuance of the writ in this case is not equivalent to imprisonment for debt, which is prohibited by our Constitution (article 1, sec. 18). In any case where it would amount to such imprisonment it would necessarily have to be denied. In this case the writ was not to compel the defendant to pay a debt, but in order to prevent him from removing personal property on his person or within his control from the jurisdiction of the court, without first giving bond, the property held by him being a certified check and a note payable by complainants upon which they were entitled to a credit of $2,890. The note was negotiable, and if defendant were allowed to carry it beyond the jurisdiction of the court and deliver it to an innocent purchaser, the remedy of complainants would have been lost. It was not therefore to compel him to pay a debt that he was arrested, but to prevent his removing the check and note in question out of the jurisdiction of the court, or in place thereof, giving bond to the court. The purpose of the writ was to secure the jurisdiction of the court over the person of the defendant so that he might be

prevented from carrying the property in question beyond the jurisdiction of the court, or be compelled by process of contempt to perform the decree of the court.

It has been held in this State that a statute (Shannon's Code, secs. 6092, 6093) giving the chancery court jurisdiction upon bill filed by the complainant to compel a judgment debtor to discover any specific property, prevent its transfer, and to subject it to the satisfaction of complainants' judgment, which can only be accomplished by process of attachment for contempt, is not imprisonment for debt.  Judge McFarland said:

"The court may imprison him, not because he is unfortunately unable to pay his debts, but because he willfully refuses to obey the lawful orders of the court. In all other cases, when the court, in the exercise of rightful jurisdiction, orders specific things to be done, such as the execution of a deed, or the surrender of property by a trustee, etc., the order may be enforced by imprisonment, and such imprisonment is not imprisonment for debt." *Cresswell et al.* v. *Smith,* 8 Lea, 699.

This practice is not unlike the remedy we are now enforcing under the ancient writ of *ne exeat.* The reasoning why the enforcement of the one is not imprisonment for debt applies equally to the other.

The writ will not issue for demands which are uncertain or contingent. It will be applied to private rights with caution. Either the demand or its enforcement must be of an equitable nature. The intended departure beyond the jurisdiction of the court must be

by positive allegations or by facts, threats, or declarations evidencing such intention, and that the right or demand sought will be lost or recovery greatly endangered by the defendant's departure. It is not essential to allege an intent to avoid jurisdiction. Gibson's Suits in Chancery, secs. 864-867, and notes; 29 Cyc., 383-393, and cases cited.

The chancellor was therefore in error in dismissing this writ upon the motion. Decree will be entered in this court reversing the decree of the chancellor and rendering judgment against defendants for the sum of $2,890, as prayed for in the bill, which will be credited on the unpaid notes for purchase money, and in case this cannot be done, then this amount may be recovered against defendants and their sureties on the bond which the defendants executed in the case.