William B. MILLS and wife, Barbara Mills, Petitioners-Plaintiffs,

v.

Oliver L. BROWN and wife, Joan H. Brown, Respondents-Defendants,

v.

Robert F. TALLENT and wife, Sue L. Tallent, Respondents-Third-Party Defendants.

Supreme Court of Tennessee.

July 10, 1978.

John B. Hagler, Jr., Cleveland, for petitioners-plaintiffs.

Allen H. Carter, Carter & Reid, Athens, for respondents-defendants.

Edwin C. Harris, Eugene Pennington, Madisonville, for respondents-third-party defendants.

## OPINION

HARBISON, Justice.

This is an action for damages brought by the purchasers of real property, alleging a deficiency in the number of acres purchased. Their vendors in turn sued the persons from whom they had purchased it, claiming a somewhat larger deficiency.

The facts of the case were stipulated. All parties agreed that both sales in issue were by the acre, and not by the tract, or in gross. Prior to trial the original plaintiffs sold the property for more than they paid for it, despite the deficiency in acreage. Both the Chancellor and the Court of Appeals held that in effect the plaintiffs had thereby "ratified" their purchase and had "made a profit" from it. Both courts denied relief. We granted a petition for certiorari filed by the original plaintiffs, and a protective petition filed by the third-party plaintiffs. We are of the opinion that the courts below were in error in denying relief to both.

The subject matter of the suit was a tract of unimproved land in Monroe County. On June 24, 1972 respondents Brown purchased the property from the third-party defendants Tallent at a price of one hundred dollars per acre. All parties involved in that transaction believed that the tract consisted of at least 165 acres, and the purchase price accordingly was fixed at $16,500.00. The warranty deed actually called for "160 acres, or more."

A little less than eight months later, respondents Brown sold the property to petitioners Mills for $137.50 per acre, by warranty deed describing the tract as "160 acres or more." The total purchase price was $22,000.00.

About nine months thereafter, petitioners Mills contracted to sell the property to Fred Key at a price of $200.00 per acre. In this transaction, however, a survey was called for. It is stipulated that an accurate survey was made, showing that the tract contained only 122.5 acres, rather than 160 acres. Petitioners deeded the property to Key, receiving $200.00 an acre therefor, or a total purchase price of $24,500.00 for 122.5 acres. Had the tract contained 160 acres as deeded, petitioners would have received $32,000.00 therefor.

Subsequently petitioners sued their vendors, the Browns, for the deficiency of 37.5 acres at the price which petitioners had paid, $137.50 per acre, or a total of $5,156.25.

In their answer, the Browns admitted the allegations of the complaint, conceded the deficiency, and sued their vendors, the Tallents, for a deficiency of 42.5 acres (the difference between 122.5 acres and 165 acres, upon which their transaction had been based) at a price of $100.00 per acre, or $4,250.00.

The third-party defendants, respondents Tallent, denied that either the original plaintiffs or the third-party plaintiffs were

entitled to relief, and their position was ultimately sustained both by the trial court and the Court of Appeals. In his memorandum opinion dismissing all actions, the Chancellor recognized that ordinarily a purchaser who has bought land by the acre is entitled to an abatement of the purchase price upon discovery of a shortage. He cited a recent leading case on the subject, *Delforge v. McMurtry*, 481 S.W.2d 396 (Tenn.App.1972). In the present case, however, because he felt that the original plaintiffs, petitioners here, had never given their vendors "an opportunity to rescind the contract . . . ." but instead had "decided to comply with his agreement with the purchaser rather than give the defendants an opportunity to respond . . . ," relief should be denied. He recognized that there "could conceivably be a question of damages" but concluded that the petitioners had not shown damages but, in fact, had "made a profit from the transaction." He dismissed both the original action and the third-party claim.

It is apparent that during the periods of time involved in these transactions, property values were increasing and that the petitioners did in fact receive more for the property than they paid for it. This, however, in our opinion, does not determine the rights of these parties.[1] In effect, both the original defendants and the third-party defendants insist that the petitioners should have offered rescission of the transaction, and that they should have afforded one or the other of these parties an opportunity to refund to the petitioners the amount which the petitioners had originally paid. In this way, of course, either the defendants or the third-party defendants would have profited from the increase in property values, but they contend that the petitioners would have been made whole.

■ The election of remedies, however, in the case of a purchaser of property who has been damaged by mutual mistake, lies with the purchaser, not with the vendor. It

is perhaps arguable that the petitioners could have utilized the equitable remedy of rescission upon discovery of the shortage in acreage, had they desired to do so, and had they taken the requisite legal steps. There does appear to have been a good faith, mutual mistake as to the quantity of land involved, and a court of equity possibly could have allowed rescission; alternatively, however, depending upon the equities of the case, it might have denied that relief and awarded damages in the form of an abatement of the purchase price, as was done in the case of *Delforge v. McMurtry*, 481 S.W.2d 396 (Tenn.App.1972). This, rather than rescission, is the usual remedy in cases of mistake in quantity where sale is by the acre and not in gross. *See Caughron v. Stinespring*, 132 Tenn. 636, 179 S.W. 152 (1915); *Rich v. Scales*, 116 Tenn. 57, 91 S.W. 50 (1905); 77 Am.Jur.2d, *Vendor and Purchaser* §§ 110 et seq. (1975). Abatement of purchase price frequently is not permitted where there is a sale in gross, in the absence of actual fraud. *Williams v. Daniel*, 545 S.W.2d 120 (Tenn.App.1976); *Evins v. Price*, 63 Tenn.App. 627, 477 S.W.2d 204 (1971). *See generally* Annot., 1 A.L.R.2d 9, 19–20 (1948).

■ It is probably true that the petitioners waived any right to rescission by "ratifying" the contract and selling the property to Key. They did not, however, in our opinion, lose their right to sue for damages. The two remedies are not the same. The cases cited and relied upon by the defending parties deal with the denial of rescission where the purchaser has specifically ratified the contract or taken some other step inconsistent with that particular remedy. *See Gilbert v. Hunnewell*, 59 Tenn. 289 (1873); *Knuckolls v. Lee*, 29 Tenn. 577 (1850).

■ Rescission, of course, involves the avoidance, or setting aside, of a transaction. Usually it involves a refund of the purchase price or otherwise placing the parties in their prior status. As this Court pointed

---

1. That it could be pertinent in establishing the absence of damages had the sale been by the tract, or in gross, rather than by the acre, *see*

*Lee v. Watson*, 181 S.W.2d 599 (Tex.Civ.App. 1944).

out in a recent decision, *Isaacs v. Bokor*, 566 S.W.2d 532, released at Nashville for publication May 1, 1978, the purchaser who has been the victim of fraud or mistake may recover, in addition to the purchase price, other damages which he may have incurred in good faith by reason of the mistake, such as cost of improvements and the like.

 It was also pointed out in that opinion, however, that rescission is but one of a number of remedies available to the purchaser. In the present case the petitioners did not seek to avoid or set aside the transaction, but claimed an abatement of the purchase price because of a shortage in the acreage conveyed to them. This is one of the well-settled remedies available to a purchaser of land by the acre, and we do not find that the petitioners have taken any action inconsistent with their right to pursue it. Such an action is based upon an election by the purchaser to affirm the transaction, not to avoid it. We are not familiar with any authority which requires the purchaser, in order to avail himself of an action for damages, to forego any economic advantage which may have accrued to him by increase in market value of the property.

The judgments of the courts below are reversed. We are of the opinion that judgment should be awarded to petitioners Mills against respondents Brown in the amount sued for, $5,156.25, with interest from the filing of the complaint, and judgment to respondents Brown against third-party defendants Tallent in the amount of $4,250.00, with interest from the date of the filing of the third-party complaint. We do not deem this an appropriate case for the allowance of interest to any party prior to the institution of suit. Costs will be taxed equally to the respondents Brown and the respondents Tallent. The cause is remanded to the Chancery Court of McMinn County for entry of judgments in accordance with this opinion and for such further proceedings as may be necessary to enforce them.

HENRY, C. J., COOPER and FONES, JJ., and WM. I. DAVIS, Jr., Special Justice, concur.