IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2007 Session

## MATTHEW FLORY and CHRISTI FLORY v. JOHN ARNOLD FITZGERALD

Direct Appeal from the Chancery Court for Rhea County
No.  9989  Hon. John Turnbull, Chancellor

No. E2006-02077-COA-R3-CV  - FILED MAY 30, 2007

Plaintiffs purchased property from defendant by Warranty Deed which stated the property contained 15 acres.  Plaintiffs subsequently learned in litigation with a neighbor over the boundary line, that the parcel only contained 10.66 acres.  Plaintiffs then filed this action against defendant to recover damages and the Trial Court held that plaintiffs were entitled to damages under the warranties in the Deed in the amount of $6,660.00 for the shortage of acreage plus costs and the judgment they incurred in the boundary line dispute with their neighbor.  On appeal, we affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Andrew F. Tucker, Dayton, Tennessee, for appellant.

John R. Anderson and Robert S. Grot, Chattanooga, Tennessee, for appellees.

**OPINION**

Plaintiffs' Complaint averred that they had purchased property from defendant in 1996, which defendant conveyed to them by Warranty Deed, and that the deed described the property as containing fifteen acres.  Further, that a dispute arose in 1997 with an adjoining property owner over timber rights, and a suit was filed to resolve that dispute.  In that suit it was determined that

plaintiffs only had 10 ½ acres instead of the 15 set forth in the Deed. Plaintiffs charged that defendant was guilty of breach of contract, misrepresentation, negligence, fraud by concealment, and violated the Consumer Protection Act. Plaintiffs sought damages for their loss, prejudgment interest, and attorney's fees.

Defendant's Answer asserted that plaintiffs had waived the warranty in the deed by failing to notify defendant to defend the deed, and that when he was contacted by plaintiffs about the problem, he offered to repurchase the property for the price plaintiffs had paid him, i.e., $22,500.00, but plaintiffs refused to allow him to repurchase the property. Defendant concluded that he never had the property surveyed and that he conveyed the property using the same legal description which was in the prior Deeds.

The case was tried on August 1, 2006, and Matthew Flory testified that he negotiated to purchase the property with defendant, and asked defendant about having a survey done, but defendant wanted a quick sale and didn't want a survey. He testified that they agreed to purchase the property for $1,500.00 per acre. Flory offered into evidence the warranty deed they received from defendant, and testified that they paid defendant $22,500.00, which was reflected in the deed. He testified that after the purchase they began cleaning up the property and cutting trees to clear an area for a house. He testified their neighbor approached the loggers and told them they were across the line and were cutting timber on his property. Flory testified that he told defendant the next day about what had happened, and defendant told him the adjoining property owner was crazy, and that the deed was good and he would stand behind it.

Flory testified that they employed Howard Upchurch to bring an action to settle the boundary line dispute.

The next witness was David Manser who testified that he purchased the land from the Florys, as his property adjoined that tract. He testified that he offered to buy the 15 acres, but when he found out there was only 10, he reduced his offer. He testified that he would have paid $60,000.00 for 15 acres.

Defendant testified that he agreed to sell the property to plaintiffs for $22,500.00, but denied there was any discussion about a per acre price. Further, that plaintiffs never discussed a survey with him, and he was not opposed to a survey.

Defendant testified that he learned about the boundary line litigation from Howard Upchurch, and that he immediately offered to re-purchase the property for the whole purchase price, even though plaintiffs had cut timber from the property. He testified that he thought he had to be given written notice to defend the Deed, and he would have defended the Deed had they given him proper notice. Defendant testified that he could not remember when Upchurch contacted him, but he knew it was before the survey was done.

Howard Upchurch testified that he had known defendant since the 1970s and that they

were friends. He testified that he was employed by the Florys to resolve the boundary line dispute, and he called defendant and defendant gave him all the information he could that he thought would help the Florys in their lawsuit. He testified that he often consulted with defendant in the early stages of the case.

Upchurch testified that after the independent survey was done and it was clear that the neighbors, Sedmans, had a superior claim to the land, he contacted defendant and asked if he would repurchase the property from plaintiffs, and defendant offered to repay the purchase price, but no more. Upchurch admitted he never put defendant on written notice to defend.

The Trial Court ruled that there was a mutual mistake of fact, and that both parties thought 15 acres were being conveyed. The Court found that when plaintiffs learned about the disputed boundary, they put defendant on notice of the dispute. The court found that Upchurch contacted defendant at the outset, before suit was filed, and then later when differing surveys caused him concern about the case. The Court found that based upon his consultation with defendant, Upchurch agreed to the independent survey, and that the independent survey showed there were 4 ½ acres less than what the deed called for.

The Court held there was a breach of the warranty in the deed from the defendant as to the quantity of land conveyed, and that while defendant did offer to repurchase the property for the original purchase price, the Court said that several years had passed at that time, and that plaintiffs were entitled to a return on their investment, but were not entitled to $3,900.00 per acre the price paid by Manser. The Court found that damages should be limited to abatement damages, and that prejudgment interest would not be allowed, because plaintiffs made a significant profit when they sold the remaining land. The Court further held that plaintiffs could also recover the costs of the lawsuit with the Sedmans. In the Final Judgment, the Court awarded plaintiffs the cost of the 4.44 acres at $1,500.00 per acre, which amounted to $6,660.00. The Court also awarded plaintiffs judgment for the costs incurred in their lawsuit with the Sedmans, which consisted of the $2,295.00 judgment they paid, the deposition costs of $530.00, and court costs of $414.00. The Court denied prejudgment interest.

Defendant appealed and the parties raised these issues on appeal:

1.      Whether the Trial Court erred in awarding damages to plaintiffs on their breach of warranty claim, when defendant never had the opportunity to defend the title regarding the acreage conveyed in the prior boundary line dispute?

2.      Whether rescission of contract is the proper remedy for a mutual mistake when the seller offered to refund the purchase price in full?

3.      Whether plaintiffs should have been awarded prejudgment interest?

4.     Whether plaintiffs should be awarded damages for the filing of a frivolous appeal?

Defendant argues that it was erroneous for the Trial Court to award damages, when defendant was not asked to defend the title in the boundary line dispute between plaintiffs and their neighbors, but cites no authority for his position. Defendant simply argues that if he had been brought into the boundary line dispute and could have shown the surveyor the proper points of reference, the outcome of that dispute would have been different. Thus he asserts that plaintiffs' claim is "stale", suggesting a defense in the nature of waiver/laches.

Defendant does not address the fact that he was made aware of the boundary line dispute before the lawsuit was filed, and could have asked plaintiffs and their attorney to join him as a party, or could have sought intervention on his own, or could have simply testified in the lawsuit regarding where he alleges the proper boundary line to be. Defendant did none of these things, despite having knowledge of the lawsuit from its inception, and despite being in consultation with Mr. Upchurch about the dispute on numerous occasions. Defendant does not cite the Court to any authority that requires the seller of the property to be brought into a subsequent boundary line dispute between the purchaser and an adjoining property owner, in order for the purchaser to "preserve" his claim against the seller for a shortage of acres purchased. Any claimed waiver or laches would be applicable to defendant's actions as well, since he had notice of the dispute over the property and believed that the property contained fifteen acres.

Plaintiffs rely on the case of *Moore v. Teddleton,* 2006 WL 3199273 (Tenn. Ct. App. Nov. 7, 2006), where this Court held in a breach of warranty and misrepresentation action against the seller of the property that the seller would be a proper party, but was not an indispensable party to the boundary line dispute. We stated in that case that while the seller was affected by the outcome of the previous suit, he and the Moores had an identity of interests, and thus his interests in the same were represented by the Moores. This Court cited to 11 C.J.S. *Boundaries* §110 (2006), which states that a prior owner is not a necessary party to a boundary line dispute, but may properly join and prosecute the action if he wishes and has agreed to do so. *Id.* at 7.

In this case, defendant was not an indispensable party who was required to be joined in the boundary line dispute, because he had an identity of interest with plaintiffs in that litigation. Defendant could have sought to join in the suit if he had desired, but he did not. The Trial Court properly allowed the plaintiffs' claims to proceed against the defendant.

Next, defendant argues that plaintiffs were limited to the remedy of rescission, due to the fact that a mutual mistake occurred, and he had offered to refund the purchase price. Plaintiffs rely on *Mills v. Brown*, 568 S.W.2d 100 (Tenn. 1978), wherein the purchasers of land sued the seller, claiming a shortage in the acreage purchased due to a mutual mistake, and the Supreme Court allowed their claim. The Browns had purchased a tract of land from the Tallents, which they believed to contain at least 160 acres, for the price of $100.00 per acre. *Id.* The Browns later sold this same tract to the Mills for $137.50 per acre. *Id.* A subsequent survey performed in connection

-4-

with the sale revealed that the tract only contained 122.5 acres, and the Mills sold the tract for $24,500.00, which was $200.00 per acre. The purchaser would have paid the Mills $32,000.00 if the tract had contained 160 acres. *Id.*

The Mills then brought an action for the deficiency in acreage, and the seller denied that the Mills were entitled to relief. The Trial Court and this Court agreed, apparently because the plaintiffs had not given their vendors an opportunity to rescind the transaction, and because the plaintiffs had proceeded with a sale of the property and made a profit from the transaction. *Id.* The Supreme Court disagreed, and found that the property values were increasing during the time that these transactions took place, and that the fact that the plaintiffs had sold the property for more than they paid for it was not determinative. *Id.* The Court stated, "election of remedies, however, in the case of a purchaser of property who has been damaged by mutual mistake, lies with the purchaser, not with the vendor", and plaintiffs did not have to seek rescission, but could seek abatement of the purchase price, which was the usual remedy in a case where there was a shortage of acreage from a sale by the acre, due to mutual mistake. *Id.* at 102.

The Court held that the Mills sale of the property did not abrogate their right to sue their vendors for damages. The Court stated that rescission was "but one of a number of remedies available to the purchaser." *Id*. at 103. The Court went on to explain:

> In the present case the petitioners did not seek to avoid or set aside the transaction, but claimed an abatement of the purchase price because of a shortage in the acreage conveyed to them. This is one of the well-settled remedies available to a purchaser of land by the acre, and we do not find that the petitioners have taken any action inconsistent with their right to pursue it. Such an action is based upon an election by the purchaser to affirm the transaction, not to avoid it. We are not familiar with any authority which requires the purchaser, in order to avail himself of an action for damages, to forego any economic advantage which may have accrued to him by increase in market value of the property.

*Id.* at 103.

Accordingly, we conclude that plaintiffs herein were not limited to the remedy of rescission, but could elect to pursue their damage claim against the defendant for abatement of the purchase price, as well as other incidental damages. *See also Rhodes v. Hildebrand Co. Realtors*, 1985 WL 4137 (Tenn. Ct. App. Dec. 5, 1985). This issue is also without merit.

Prejudgment interest is discretionary with the trial court, and the trial court's decision should not be reversed absent an abuse of that discretion. *See, Otis v. Cambridge Mut. Fire Ins. Co.*, 805 S.W.2d 439 (Tenn. 1992). The Trial Court found that plaintiffs had received considerable profit from their sale of the land to Manser, and on that basis denied prejudgment interest. We hold the Court did not abuse its discretion in disallowing prejudgment interest.

Plaintiffs argue they should be awarded damages for defendant's filing of a frivolous appeal. While defendant failed to cite any controlling case authority in support of his arguments on appeal, he focused on factual disputes, and we conclude that this is not a proper case for the imposition of sanctions for frivolous appeal.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to John Arnold Fitzgerald.

_____
HERSCHEL PICKENS FRANKS, P.J.